Case No. 13-1807, Stephen Bullock v. City of East Grand Rapids, et al. Argument not to exceed 15 minutes per side. Ms. Rakhine, you may proceed for the appellants. Thank you. Good morning, and may the peace and court be with you. Rosalind Rakhine is appearing on behalf of the defendants, Brian Davis, Gary Parker, the City of East Grand Rapids, and the City's Chief of Police, Mark Carroll. The qualified immunity issue before the court today concerns the period of time after Matthew Bowman was handcuffed, and it questions the reasonableness of the degree of force that was used, bottling, and handcuffing. Specifically, the questions are, one, whether it was clear that Matthew Bowman was neutralized once he had been handcuffed. Two, if he was not neutralized, was the force used to bring him under control constitutionally acceptable? Three, if either of those questions are answered in favor of the plaintiff, such that a Fourth Amendment violation could be found, whether or not it was clearly established on November 16, 2009, that the officer's conduct was neutral. If we were to take the testimony given in the deposition by two officers who were restraining the deceased, it would be clear that that would be followed by the meeting of the plaintiff. This is really our task to decide if there's other evidence that creates some question of fact that would mean that the issue has to be tried from the jury. We have accepted the, if I understand what the court's getting at, we have accepted the testimony of Kevin Bowler, asked that the district court accept the facts as stated by the district court, and we believe that even under that version, there is no question. How do you extinguish Kevin Bowler's testimony? Well, Kevin Bowler came upon the scene and looked through the window and saw the officers and his brother, I think, was already on the ground, and he testified as to the positioning that he observed, and he testified that he believed that the conduct, the bucking and struggling that he observed of his brother was an expression of pain and discomfort and was not indicative of continued resistance. That is not identical to the officer's testimony, do you agree? The officer's testimony is that they perceived it to be resistance. What is, I believe, identical is the fact that he was as well as observed as to what he was doing with his body. The motivation behind what he was doing was perceived by the officers to be different than perceived by Kevin Bowler. Motivation. Motivation is not wrong. It's really what an objective officer would conclude. That is our position. So your view is everybody, if you throw him over to the side, everyone agrees. So you put why he was still kicking to the side, everyone agrees he was still kicking, and then you say he's still kicking, it's not enough that they have a handcuff to have on top of him or holding him down to people. It's their resistance, so they get to keep doing that. So just one thing I was puzzled about a little before our argument. How does it work when – let's just say I buy that exact theory in this sense. I think that is the fact. So I think the officers, one of them was on, I can state this, on part of his shoulder, part was holding down the back side. He's still – his legs are still coming up. We don't have to ask why. Is it possible that that still goes to a jury in other words? I mean do we always decide once we know what the facts are? Are we always in charge of deciding what's reasonable and excessive force and what's not? Or can there be situations where, well, no, I mean that's – it may be that the facts are undisputed, but those facts still create a triable issue for the jury, i.e., was this excessive? I'm a little embarrassed I don't know the answer to that question. Well, I think that the question you're asking is not a particularly easy one. I think that it's really asking two questions, one of which is easier than the other. I think that there are situations where we throw motivation to the side and where the – there can still be a jury submissible issue as to what precisely was going on. There could be a question of that as to whether he was struggling or not. We've certainly seen cases where that's – where that has been a question. I think in their argument – My echo assumes motive has nothing to do with it. Correct, correct. But you could have a question of fact as to precisely what happened. You could have a question of fact, for example, in this case. What is – what's the question of fact? Well, I don't think there's a question of fact in this case. I'm not willing to say that there's never going to be a case where there's a question of fact. I think, though, that whether or not it's the court that always decides what's objectively reasonable, I think it always is the court that decides what's objectively reasonable. I think that there are some cases where there is an underlying factual issue that has to be decided by a jury. What if the – maybe the underlying fact issue here is, yes, it seems to be undisputed. His legs were still moving up and down. But what's not clear, what the jury might have an interest in figuring out is how aggressively they were moving up and down. Was one leg coming up every two seconds, or was they – so that's the underlying set of facts that only a jury can figure out. If a given factual circumstance and the totality of the circumstances, that was deemed to be relevant and material. Sure, it's relevant. Seemed to be material. In this case, I don't believe that – I believe that the testimony of the officers, which is not – and the testimony of the City of Grand Rapids officers who came afterwards and who observed what was going on, is not contradicted by Kevin Goldman's testimony. And it establishes that it was taking two officers to keep him down. And, in fact, after they were relieved, it took three officers to keep him down. So I think that the degree of kicking or struggling that was going on is not a disputed fact that we have to fill out. If I could interject. We all agree. The officers – theirs was the only testimony in this case that would be very different from the analysis. It's whether or not other testimony changes this. The first one says it didn't appear that he was trying to buck the officers off to take them. It says it looked to be a lot of pain, and it was kicking his legs. He says that. And he goes on, how high would he get his legs off the ground if the injury was inches? So that's the first part. The second part says his feet shuffled slowly, but not kicking. It had any means. And the question, did you ever see him try to buck one or more of the officers off? And he says no. So that's the testimony. That pretty much is the case right here, isn't it? That is the case right there. And if Kevin Bellick had observed the entirety of the incident, it might present a more difficult question than I think it does. He did not see what the officers had perceived prior. The totality of the circumstances. And he didn't see after either. I don't understand why that matters. The totality of the circumstances, I think that matters. No, but the point is that the way it just started, it just moved his legs a couple of inches. It's self-evident that he was trying to buck them off. I see what you're saying. Well, I think I – I think you've already got the question and figured out what exactly was he doing. So then if we accept that testimony, let's take that testimony and see where that takes us. If we accept that testimony, the question would still be whether or not it was objectively reasonable for these officers, assuming that he was moving exactly as you have just stated. They would say he was moving. They're not saying he's not moving. They're saying he's not moving very much. Okay, he's not moving very much. And if we're going to put that within the totality of the circumstances, we have to accept – we have to also recognize the undisputed testimony, not only undisputed but supported by other witnesses, that the conduct that he had been exhibiting throughout the incident was unpredictable. He would appear to be compliant, and then he would become assaulted. And so if at the point that Kevin Golan saw him, he was moving as described, that would not – a reasonable officer would not have believed that the danger had ended, that he was compliant, that he was neutralized. And a reasonable officer would not have believed that it was not necessary to keep him under control and immobilized, waiting for, one, backup from the officers that had been called, and two, the arrival of the EMS, who had been called at the beginning of the incident. And so I believe that if we take the testimony as you have described it from Kevin Golan, that it is for this Court to rule as a matter of law that it was objectively reasonable. It's a Fourth Amendment standard. It was objectively reasonable. But even if you get beyond that, even if you get beyond that, the qualified immunity issue should not turn as to whether it was clearly established. And the law, both at the time that the briefing was done in this case and the United States Supreme Court opinions which have come down since, have clarified and reiterated that the question is, would every reasonable officer have understood in those circumstances that what they were doing – Pardon? I don't think you have a lot of clearly established arguments in this area from your perspective. In other words, I think this area of the law was pretty clearly established. It was clearly established that they could not use that force? Well, no. The rules were fairly clearly established is the point I'm making. This is a problem on case. That's all I'm saying. Oh, you think it's a problem on case? Because I don't – What's the big case? What's the big case that really helps you? On the clearly established? Yeah. Well, I think that if you found there to be a Fourth Amendment violation of the first prompt case, then the question would have been, you would have to say that using a taser in drive-stun mode under those circumstances was objectively unreasonable. I don't know of a case that establishes that. If the suspect is not resisting, it's not clearly established. You can't use a taser on a non-resisting suspect. If he's not resisting, but I think that – That's their argument, is that he's got some minimal leg movements, but there's no resistance at all. He's handcuffed. He's on a stomach. I concede that point. If it's clear that he was not resisting, I would have to concede that point. But I think that what is not clearly established is that – what under the clearly established prompt, I don't think every officer would have recognized that to be the case. That goes to the facts, though, isn't it? At this point, we have to view the facts in the light most favorable to the police. Let's assume that to be true, and let's assume there's a Fourth Amendment violation. The question then, though, is still whether every officer would have interpreted his action as the jury found it was. But it depends what his action is. I mean, if his action is just minimal movement, it's much different than if he's actively picking and he's actively struggling. Isn't that the whole crux of the case is how much is movement in? But I think that it goes beyond that. To talk about what a reasonable officer – whether or not it was a reasonable mistake, whether or not there was room for an officer to make a mistake, whether the law had allowed that, has to look at the experience that the officers had with that individual. And while a jury could conclude that at that particular moment he was not resisting, therefore no force should have been used, therefore there was a Fourth Amendment violation, I think that what we're talking about is the clearly established fraud, which is the second fraud. It also looks at whether or not the officers – I think we've got your argument, so I'm going to give you your full rebuttal. That's good. Thank you. Anything else? Good morning. My name is William F. Mills, and I represent the plaintiffs in the State of Massachusetts. Can I jump right to a question? Sure, ma'am. I discussed with the opposing counsel whether or not she saw this case as involving the testimony of two officers. Mr. Prime Minister, this is a lot about the testimony, but it's narrowly focused in our case. We have two officers who were restrained in the seat, and then we have the two brothers. Does that mean higher unit testimony or do you think they're on the same sheet? I think that the – a little bit more than that, I believe. When the Grand Rapids officers came in, they also testified. Officer Mullen, she described it as being taking three officers to hold them down. That's not true. Officer Mullen said, I had no – I came in, David said, would you relieve me? I was holding the legs with no problem, and he was just doing what David was telling him. Remember, the Grand Rapids officers relied on what they were told by the people there. I think that essentially it's the – Jonathan, Kevin, and also the two East Grand Rapids officers. But I think the law supports this in this area, too, if you want to address that. Well, so we have the two officers saying constant struggle. We have the two brothers saying movement, but destructive. Go ahead. I can see their testimony in terms of creating an additional factor or not. Go ahead. Yes, and also I should point out, too, both the Martin case and the Champion case, and Judge Maloney replied to mine, in both of those cases they described the movements of the victim exactly the same way as the movements of Matt Bullock. And also I think it's very important. What do you mean by that? Well, they were talking about – Use the words, legs going up and down. Legs going up and down. They even described bucking, which is what Matt was not doing. But he was, in both the Martin case and the Champion case, that there was much more action by the victim of the court rule. That doesn't matter. You still had him pinned down and handcuffed, and it was a violation of the Constitution to do that in that situation. Another point, too – So the violation is the tase, the tasing while he's down? Is that the violation? I think the – I'll deal with the clearly established offense we're talking about here. But here's what – yes, I think the two tases. I'm just curious. I mean, so one thing would be tasing while he's already down. And handcuffed. And then what would be the other things? Keeping continuous weight on his upper body while he's face down. The film doesn't suggest – when you say that, what do you mean? I mean, it's not – it's not in the end of time. The film doesn't show that. There's very little film in this case, Your Honor. Very little film. Maybe it's – I thought it made it clear that he wasn't having both legs, you know, all of his body weight on his shoulders. There's testimony that the – from Davis, from the party. The film, a thousand words. Do you think the film shows that he's got all his body weight on his shoulders? I think the film is a very brief little part of what it describes. I'm relying upon the witnesses, what they saw, not just Kevin and Jonathan, but also Parker himself and the Grand Rapids Police when they got there, that he had weight on his back. Well, I know he had some weight on his back. There's no doubt about that. That's the question of excessiveness. Surely it's not excessive to be kneeling next to him and having your hands keeping your shoulders to the ground. But that is not what the testimony has been. The testimony has been that his knees were on his back. Now, where on the back, specifically, the testimony moves around a little bit. Some say it's – people say it's up by his shoulders. What part of the encounter in your view is the film capturing? Is there something, some evidence that says that? I don't see anything on the film that tells us exactly. I'm sorry. Is there somewhere, somewhere that says, ah, you really can't use the film because that only captures 30% of this? I don't think we can answer that question. Why can't I assume that the film accurately captures the extent it's showing the encounter? I don't care about anything else. I mean, this is Scott versus Harris. I have the film. I watched the film. But you watched the film for a very brief segment of time there, not the entire thing. I mean, he admits he had his weight on his shoulders. Davis admits that. Yeah, that's my point. Having weight on the shoulders with your arms and occasionally putting one knee to keep them down is very different from the picture, which I think has created a little of a breeze, of having both knees on the shoulder and all 5% of the weight on the shoulder. Those are different things. I must admit, Your Honor, that I haven't looked at the film in a long time, but my memory of that film was not that it shows that Davis did not have his legs on him. One more thing I'd like to point out, though, about the interpretation as to whether he was trying to resist. On page 32 of the transcript of the various audio that we had in the case, I think it's very insightful. Parker says in response to Matt, We're not trying to hurt you, dude. Just relax. I'm letting you breathe. I'm letting you breathe. Don't move around. Just relax. That comment can only be in response to Matt saying, I can't breathe. So there is evidence here from Matt himself, now deceased, why he was laying there, people on his back, Parker on his legs, and he's saying to Parker, I can't breathe. I can't breathe. That's not an indication of resisting. That's an indication of I need some air. I need to breathe. I have to get up. So I'm just pointing that out to the court. I'm sure they read the transcript as well. So let me go. I'm sorry. Did I answer your question, Judge? Yeah. I thought you were about to say you were done. I think I kind of am done. I'm a little confused with Judge Maloney's ruling. In his opinion, he states on page 27 or 37, plaintiff's request to dismiss defendants of permanent defense and qualified immunity is granted. But then in his order, he says, the claims that remain against the individual defendants are plaintiff's claims of excessive force and that's so. In the opinion, it appears that the affirmative defense is dismissed. But in the order, it appears to say, no, those issues of qualified immunity remain for trial. Is there a conflict between the opinion and the order? I don't think so because, as you know, qualified immunity is not a defense. That's just the first step to see if we can go forward with the case. Is it not a defense? No, it's not a defense. It says it's not a defense. It's a first stepping stone whether you can bring the case. Do they have immunity or not? It's a first stepping stone. Are you saying it has to be resolved one way or the other on the summary judgment? No, I'm not saying that. It can go to trial, can it not? Oh, certainly it can. Did Judge Maloney order it to go to trial, the issues of fact as to qualified immunity here, or did he just flat out dismiss the defense? He ordered it to go to trial on a lot of other issues, about objective reasonableness, I suppose, and other issues, because we had a trial date set for July 15th. But at the hearing on May 6th, the judge was told by the defense that if he rules against them, we're going to be up here to see the Sixth Circuit for appeals. But Judge Maloney was insisting, we're going to trial on July 15th. You want to appeal, fine, go ahead. The trial date is July 15th. So, yes, he was going to go forward with that. Are the issues of qualified immunity under Judge Maloney's ruling to be presented at trial or not? I don't believe so. I think the issues are whether the force was excessive or whether they had qualified immunity. That's been decided. That's my understanding. Oh, you say they're different, that they were trying to issue the excessive force irrespective of qualified immunity? Is that your interpretation? I think that the question of what they did, as far as reasonableness, objectively reasonable, I think that's a question that will go to trial. So is your reading of the order that the judge is saying, well, there's two prongs to qualified immunity, the second prong is what was clearly established. I'm deciding in this case that the excessive force standard was clearly established, and I'm not presenting that to the jury. What I am saying to the jury is whether there was excessive force here. Well, I think he ruled, in his opinion, that there was excessive force from the two ways that we just discussed. Did he rule? No, he just denied the motion. He denied it. Denying a summary judgment doesn't mean he's ruling on the fact of it. Well, he denied that them qualified immunity. On the summary judgment stage? Yes. So I think he had a chance to answer my question, which I think would have solved this, and I thought you actually said the right thing earlier. I'll take that. That's why you're sitting up there. No, you said he had trial date, and you said earlier the jury wasn't going to decide whether it was objectively reasonable force, and that's what you said. That's another way of saying the prong to one part of the qualified immunity question, which is just the same thing as whether there's a constitutional violation, is going to go to the jury. You know what? I think that's probably true, but I struggle with that because as Judge Griffin just commented, he read the judge's opinion, and in the judge's opinion he deals with the four tests of objective reasonableness. He deals with it. That's just by saying there's a tribal issue to find. Yes, I think that's probably true. Sure. That's why you're denying summary judgment goes to the jury. Right. Exactly. We are on the same page. Well, you would concede that the issues of fact as to qualified immunity are proper to go to the jury in this case. Yes, if there's issues of fact. Okay. All right. Now I'm confused. I'll find out if we can put it together. The lawyer's never liked saying yes to a question that the lawyer conceded. I totally understand. I appreciate your time. Thanks very much. Did you read a conflict between the opinion and the order? I have a problem with striking the affirmative defense. I don't think he meant to say that. I don't think he did. I think what happened is there was a motion and a counter motion. You mean Judge Maloney? Judge Maloney, yes. I'm sorry. I think Judge Maloney, when he had before him our motion for summary, and he had a counter motion for summary seeking to strike the affirmative defense. I think that when he denied our motion for summary judgment on this one segment, because he dismissed a number of other claims, including the state claims, I think he then, when he ruled on the counter motion, which asked for a striking of the affirmative defense, he struck them. I don't really think it was proper to do so, and I don't think he meant that nothing was going to the jury. Well, actually his order says the issues that remain for trial are the issues that he supposedly struck, right? Yes. I mean the two types of contradicting each other. He's just referring to on the school of the qualified immunity. He's using the phrase qualified immunity to be shorthand for the re-established law. If so, I think that is a reasonable way of reading it. If we go back to the start of the hearing, if the jury were to find a key testimony for the officers to carry today, that they would be entitled to qualified immunity for the jury trial, right? Yes. The question is the fact that he found did not allow you to obtain qualified immunity at that stage, but you're still able to present it at trial. I would agree with that, what you said, because when we talk about qualified immunity, we're talking about the two prongs. We may not have an agreement between the four of us as to whether or not the second prong is in play and what exactly would go to the jury. I think that's one of the problems. I'm not a trial lawyer, but when I've been talking, consulting with trial lawyers as they go to trial on these, is exactly how to present it to the jury so that both prongs remain in play so that you can ask the jury to resolve the factual issue. But they need to be established the way the jury in the case follows on. They don't do that. They don't do that. As far as which version of the facts to go with, which could implicate the first prong. So when you ask a jury, should you ask them special derogatory so that you find out did they accept the officers or did they accept Kevin Bullock, or do you just get a verdict that says excessive force, unreasonable force, and you don't know which version of the facts they chose. Well, also, isn't it that all reasonable officers would act consistently? I believe that that's the second prong. That's why I think the second prong is in play. I would think that would be a factual issue, too. I mean, it clearly establishes an office to me like an issue of law, but whether it's excessive and whether all reasonable officers would act in the same way is more of a factual issue. But I don't know if it could. I think that it's one of the problems that I think… They did put a reasonable officer in June. It's not a constitutional violation. That's correct. But there's a difference. There's a fine line, I think, between saying that the force was objectively unreasonable and therefore there's a Fourth Amendment violation and finding that all reasonable officers on the date in question, under the totality, under the circumstances, would have known that. Would have known that. Would have known that if they're only kicking a couple of inches. Yeah, but that's because it would have known the triggers that clearly established what the law is at the time. Whether the law is beyond debate. I mean, it's phrased differently in different opinions. That second prong, whether or not it's beyond debate, that's a clearly established inquiry. Whether every officer would have known is a clearly established inquiry. I think we've… To the extent we're going to get it, I think we've got it. Thank you very much to both of you for your helpful briefs and oral arguments. The case will be submitted in the Fourth Amendment.